**SCHLEIER LAW OFFICES, P.C.**
4600 E. Shea Boulevard, Suite 208
Phoenix, Arizona 85028
Telephone: (602) 277-0157
Facsimile: (602) 654-3790

TOD F. SCHLEIER, ESQ. #004612
Tod@SchleierLaw.com
BRADLEY H. SCHLEIER, ESQ. #011696
Brad@SchleierLaw.com

*Attorneys for Plaintiff Amy Trethaway*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Amy Trethaway, a single woman, | No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| City of Mesa, a municipal entity; and Natalie Lewis, a married woman, | **(JURY TRIAL DEMANDED)** |
| Defendants. | |

Plaintiff Amy Trethaway, by and through counsel, and for Plaintiff's Complaint against Defendants City of Mesa and Natalie Lewis alleges as follows;

**JURISDICTION AND VENUE**

1. This is an action against the Defendant City of Mesa (hereinafter " City") and Defendant Natalie Lewis (hereinafter "Lewis") to remedy discrimination and retaliation in violation of the Civil Rights Act of 1871, 42 U.S.C. §1983; Age Discrimination in Employment Act of 1967 (ADEA), as amended and modified, 29 U.S.C. §§621 *et seq,*; tortious interference with contractual relations; the False Claims Act, 31 U.S.C. §3730(h); the Fair Wages and Healthy Families Act, A.R.S. §23-374; the Arizona

Employment Protection Act, A.R.S. §23-1501 (AEPA); and the public policy of the State of Arizona.

2. The Court's jurisdiction is invoked pursuant to the federal question jurisdiction, 28 U.S.C. §1331.

3. The Court has supplemental jurisdiction over Plaintiff's state law claims because said claims are so related to Plaintiff's federal claims that they form part of the same case or controversy pursuant to 28 U.S.C. §1367.

4. Plaintiff filed a Charge of Discrimination based on her age with the Arizona Civil Rights Division, on March 11, 2022, Charge No. CRD-2022-0260, which was also submitted concurrently to Equal Employment Opportunity Commission ("EEOC"), Charge No. 35A-2022-00253.

5. The EEOC issued a Right to Sue Letter on October 12, 2022.

6. Plaintiff has complied fully with all prerequisites for jurisdiction in this Court under the ADEA.

7. Plaintiff also served a Notice of Claim on Defendant City on April 21, 2022 and on Defendant Lewis on April 28, 2022. No response was received from either party.

8. The unlawful employment practices described herein were committed within Maricopa County, State of Arizona. Accordingly, venue in this Court is proper pursuant to 28 U.S.C. §1391(b).

**PARTIES**

9. Plaintiff Amy Trethaway (hereinafter "Plaintiff") is a single woman and at all times relevant herein resided in Maricopa County, State of Arizona. At all times, Plaintiff was an individual over the age of 40.

10. Defendant City of Mesa is a public entity located in Maricopa County, Arizona organized for the purpose of the administration, support, and maintenance of the City. Defendant City is an employer for the purpose of the ADEA.

11. Defendant Lewis at all times relevant herein was/is an employee of Defendant City as the Deputy City Manager for the City and is, upon information and belief, a married woman who resides in Maricopa County, Arizona. All acts of Defendant Lewis were done on her own personal behalf/capacity and/or on behalf of her marital community under the color of state law.

## BACKGROUND

12. Plaintiff was hired by Defendant City on October 26, 1998 as an Employment Development Specialist. Throughout her employment, Plaintiff was promoted to various positions, received good performance reviews, and was highly regarded.

13. In August 2019, Plaintiff formally became the Director of Education and Workforce Development after having worked 4 years with the City's Mayor and Council as well as other City employees. Plaintiff supervised two employees.

14. During this time period, Plaintiff worked on several high budget major projects – Mesa Counts on College ACCESS Center, Mesa College Promise Project and Mayors Education and Workforce Roundtable. In being responsible for these projects, Plaintiff worked closely with Mayor John Giles.

15. In January 2016, Mayor Giles and Defendant City sought to create a program to make community college available to Mesa residents free of charge. The program was called College Promise Program ("CPP"). Plaintiff was the lead on the CPP and was part of the City's team.

16. Throughout her tenure and during this time period, Plaintiff received regular praise from Mayor Giles. City Manager Chris Brady, and Assistant City Manager Scott Butler.

17. In November 2020, Defendant Lewis, the Deputy City Manager, was assigned as Plaintiff's direct supervisor. Defendant Lewis immediately instituted negative changes in Plaintiff's duties and responsibilities, including:
- preempting critical meetings with Mayor Giles and City Manager regarding the CCP where Plaintiff was a key player and the lead City employee directing the effort by sending inaccurate text messages, and giving the Mayor and Council false information in pre-meetings without Plaintiff in attendance.
- within the first 30 days of the new assignment as supervisor, Lewis insisted she attend all of Plaintiff's meetings (virtual and in-person).
- Lewis claimed numerous times that Plaintiff was overloaded and needed assistance (which was not true).
- Lewis had Plaintiff and her staff physically removed out of the ACCESS Center.
- Lewis hired a younger employee, Lynn Spillers, to take over the ACCESS Center and attend the City meetings in the place of Plaintiff on programs that Plaintiff was responsible for. Ms. Spillers did not have the necessary experience or knowledge which allowed Lewis to improperly influence the project and budget.
- Lewis moved another younger employee, Erin Romaine, who was an administrator from the Trash Department, into the Education Department and insisted that Ms. Romaine attend all meetings with Plaintiff.
- Lewis also delegated some of the Education and Workforce Roundtable objectives to other individuals and insisted those individuals attend meetings with Plaintiff. Specifically, Lewis gave the roundtable and supervision of Plaintiff's staff to another younger employee, Andrea Alicoate, Diversity Director. Ms. Alicoate had little to no knowledge of the Roundtable, its purpose, or how to manage Plaintiff's staff either.

18. These new staff members were recent hires by Defendant City and had previously been employees of the City of Scottsdale and worked directly under the supervision of Defendant Lewis. The new younger staff members were personally and/or

professionally connected to Defendant Lewis and favored by her to comply with her unlawful suggestions and orders.

19. At the time of all the negative changes in Plaintiff's job duties and responsibilities, Plaintiff was meeting all goals and objectives and, as noted above, received high praise from Mayor Giles and others.

20. The changes Defendant Lewis made to Plaintiff's job duties were designed to either entice Plaintiff to resign or push Plaintiff out of her position.

21. Defendant Lewis then attempted to divert budget funds from the CPP, Education and Workforce Roundtable and College ACCESS Center into the Housing budget (Defendant Lewis' responsibility).

22. In April/May 2021, Plaintiff sent Defendant Lewis an email questioning the plan to have educational funds diverted to Housing. Some of the funding was provided by the federal government.

23. Defendant Lewis then called Plaintiff into a meeting, during which she became threatening. Defendant Lewis claimed that five (5) employees expressed a desire not to work with Plaintiff and suggested that Plaintiff spend time reflecting whether she wanted to move further into management. Defendant Lewis stated that she could do as she wished with the incoming educational funds and if Plaintiff did not agree, that it was Plaintiff who was the problem.

24. In June 2021, when CPP was ready to be launched, Defendant Lewis intervened with negotiations and deliberately changed some of the contract language, which altered the intention of free college and failed to include appropriate financial reimbursements as agreed upon by the CPP Committee which was under the direction of Mayor Giles.

25.     In September/October 2021 during a virtual meeting, Defendant Lewis made the comment to the attendees, which included administrators, that "we are basically money laundering here" and then laughed.

26.     Following this virtual meeting, Defendant Lewis began attending each and every one of Plaintiff's meetings.

27.     In July 2021, Defendant Lewis changed the staffing and funding process for Mesa Counts program (through College ACCESS Center), which had been fully under Plaintiff's leadership.

28.     Defendant Lewis attempted, and did in fact, move funding from the ACCESS Center into the City's Housing Department.  Such attempts and completion of the movement of such funds was illegal, as well as a misuse and mismanagement of funds.

29.     The City's Housing Department had separate funding from the educational funds even though both were under Defendant Lewis' leadership.

30.     Defendant Lewis attempted to gather all public funding allocations and funnel those through the Housing Department.  Specifically, Defendant Lewis attempted to pull the grant money from Salt River Pima Indian River Community for GED education and a grant from Gila River Indian Community for education into Housing, where such grant funds could be used for a purpose other than education.

31.     Defendant Lewis also attempted to pull funds from Maricopa County or American Rescue Plan Act (federal funds as part of COVID 19 relief) into Housing.

32.     In October/November 2021, Defendant Lewis sent Plaintiff and another employee an email stating Defendant Lewis intended to use the allocation funding as she desired even though such funds were not designated for the Housing Department.

33.     Plaintiff knew that pulling education funds into the Housing Department budget was illegal.  Plaintiff also knew that Defendant Lewis' comments about Plaintiff

being overloaded with work were untrue. Plaintiff informed not only Defendant Lewis about the illegality of the funding issue, she also reported such illegal conduct to the City Grant Administrator.

34. In October 2021, Plaintiff expressed her concerns about Defendant Lewis' actions with moving the CPP funds into Housing to Mayor Giles.

35. In October 2021, the first Workforce Roundtable meeting was held with Plaintiff, Mayor Giles and other members of the public. Defendant Lewis did not attend the meeting.

36. Shortly after this meeting, Defendant Lewis decided Plaintiff had not properly staffed the Roundtable meetings and moved a new younger employee, Erin Romaine, from the Waste Department into Plaintiff's projects. Ms. Romaine did not have any knowledge regarding education grants or managing such funds.

37. Ms. Romaine was instructed to attend all of Plaintiff's meetings and be introduced to all of Plaintiff's contacts in the field.

38. Another younger, less experienced employee, Andrea Alicoate, was also moved into Plaintiff's projects. Ms. Alicoate was the Diversity and Special Projects Manager. Defendant Lewis instructed Plaintiff to have Ms. Alicoate attend all Roundtable meetings, despite Ms. Alicoate's lack of experience in education and not having attended the initial meetings.

39. On October 12, 2021, Plaintiff contacted Employee Relations about the treatment she was receiving at the hands of Defendant Lewis. Plaintiff was directed to contact the City Attorney, which she did, and reported the harassing behavior and bringing in younger, less experienced individuals. The City Attorney referred Plaintiff back to Human Resources.

40. Plaintiff was out of the office for vacation from October 25-29, 2021. Following that, Plaintiff was out of the office for an approved week after Plaintiff's daughter had been diagnosed with COVID 19.

41. Upon returning to the office, on November 8, 2021, Plaintiff held the second Mayor's Education Roundtable meeting.

42. On November 10, 2021, Defendant Lewis instructed Plaintiff to meet with her in the lobby of the City of Mesa Plaza and was informed that due to the differences between them, there was an open position in Economic Development but that if Plaintiff did not take that position, she would be terminated.

43. Plaintiff was not permitted to return to her office, could not access her emails or phone messages, was not permitted to speak to her direct reports or conduct any City business.

44. Plaintiff asked for a job description of this position in Economic Development.  Eventually an outdated job description was provided but failed to include any duties or direction in the role.   It was also apparent that Plaintiff was not qualified for the position being offered.

45. Plaintiff requested more information about the position and some additional time, but Defendant Lewis ignored  Plaintiff's requests.

46. While Plaintiff was waiting for additional information about the new position being offered, she was notified by Defendant Lewis on November 18, 2021 that she had been terminated.

/ / /

## COUNT ONE

## VIOLATION OF 42 U.S.C. §1983 - FREE SPEECH CLAIM

**(Defendant Lewis only)**

47. By reference hereto, Plaintiff hereby incorporates all prior paragraphs as if fully alleged herein.

48. Plaintiff was a public employee during all relevant times.

49. Defendant Lewis was/is a public employee acting in her individual capacity under the color of state law.

50. Defendant Lewis worked to deprive Plaintiff of her right to free speech and chill Plaintiff's constitutional rights.

51. Defendant Lewis' actions were under the color of state law.

52. Following Plaintiff's good faith reports of potential illegal activities with regard to the budgeting and expenditure of public funds under the direction of Defendant Lewis, she was subjected to retaliation due to the exercise of her constitutional right to speak freely about matters of a public concern.

53. Plaintiff's reports and speech were matters of public concern and were protected by the First and Fourteenth Amendments

54. In response to Plaintiff's reports, Defendant Lewis retaliated against Plaintiff which included Plaintiff's removal from various committees and job responsibilities, the removal of Plaintiff from her position, and ultimately the termination of her employment.

55. Defendant Lewis' actions were designed to chill other individuals and Plaintiff from exercising their constitutional rights to free speech.

56. Defendant Lewis' actions were performed under the color of state law when she maliciously, intentionally, and/or recklessly disregarded Plaintiff's constitutionally

protected rights and in retaliation of her rights guaranteed to all citizens under the Constitution and laws of the United States, including the First and Fourteen Amendments, when Defendant Lewis continued to retaliate against Plaintiff and ultimately terminated Plaintiff's employment.

57. As a direct and proximate result of Defendant Lewis' conduct, Plaintiff has and continues to sustain economic damages in the form of lost wages and the value of lost benefits to the date of this Complaint and into the future.

58. As a direct and proximate result of Defendant Lewis' conduct, Plaintiff has sustained emotional distress, anxiety, embarrassment, humiliation, depression, denial of professional standing and reputation, deprivation of the right to speak freely on matters of public concern, and the loss of ordinary pleasures of life.

59. Defendant Lewis' actions were willful and wanton and conducted with an evil mind for the purpose of depriving Plaintiff of her federally protected rights so as to entitle Plaintiff to punitive and exemplary damages.

60. Plaintiff is entitled to an award of attorney's fees pursuant to 42 U.S.C. §1988.

## COUNT TWO
## VIOLATION OF ADEA
### (Defendant City of Mesa)

61. By reference hereto, Plaintiff hereby incorporates all prior paragraphs as if fully alleged herein.

62. At all times relevant hereto, Defendant City was an employer subjected to the requirements of the Age Discrimination in Employment Act ("ADEA").

63. At all times relevant hereto, Plaintiff was an employee covered under the ADEA as an individual over 40 years of age.

64. Defendant City violated the ADEA by altering the duties and responsibilities of Plaintiff and by allowing Defendant Lewis to hire and replace Plaintiff with younger, less experienced employees – Ms. Romaine and Ms. Alicoate.

65. The actions of requiring Plaintiff to include both Ms. Romaine and Ms. Alicoate into each meeting and introducing them to her field of contacts, serve to place them into Plaintiff's role upon her termination was done due to Plaintiff's age.

66. Plaintiff was removed from her position by the Defendant City and terminated on the basis of her age and replaced by younger employees.

67. Defendant City's actions amount to a violation of the ADEA, which prohibits discrimination on the basis of age.

68. As a direct and proximate result of Defendant City's intentional discrimination, Plaintiff has sustained economic damages in the form of lost wages and the value of job benefits in an amount to be proven at trial.

69. In addition, Defendant City's actions were intentional, willful so as to entitle Plaintiff to an award of liquidated damages.

70. Plaintiff is entitled to an award of attorney's fees pursuant to 42 U.S.C. §1988.

## COUNT THREE

## Tortious Interference with Contractual Relations

## (Defendant Lewis)

71. By reference hereto, Plaintiff hereby incorporates all prior paragraphs as if fully alleged herein.

72. A valid employment contractual relationship or business expectancy existed between Plaintiff and Defendant City.

73.     Defendant Lewis had knowledge of the employment relationship or business expectancy between Plaintiff and Defendant City.

74.     Defendant Lewis intentionally interfered with Plaintiff's contractual employment relationship with Defendant with regard to her actions by attempting to divert education funds into Housing Department, changing language in the contracts, attending each meeting, removing Plaintiff from the ACCESS Center, removing Plaintiff from her position, and terminating Plaintiff's employment relationship with Defendant City all for her own personal benefit.

75.     As a direct and proximate result of Defendant Lewis' conduct, Plaintiff has and continues to sustain economic damages in the form of lost wages and the value of lost benefits to the date of this Complaint and into the future.

76.     As a direct and proximate result of Defendant Lewis' conduct, Plaintiff has sustained emotional distress, anxiety, embarrassment, humiliation, depression, denial of professional standing and reputation and the loss of ordinary pleasures of life.

## COUNT FOUR
## VIOLATION OF FALSE CLAIMS ACT
### (All Defendants)

77.     By reference hereto, Plaintiff hereby incorporates all prior paragraphs as if fully alleged herein.

78.     This is a claim for damages under the False Claims Act ("FCA"), 31 U.S.C. §3730(h).

79.     The false claims provision of the FCA, at 31 U.S.C. §3729(a)(1)(A), provides in pertinent part that any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" shall be liable to the United States Government.

80. During her employment, Plaintiff reported to numerous agents of Defendant City and directly to Defendant Lewis her good faith belief that diverting education funds to housing was illegal and in contradiction of the purposes that Defendant City received said funds.

81. Some of the funds were part of federal programs and directed for specific contractual and federally mandated uses.

82. Plaintiff's good faith reporting of these concerns to Defendants put Defendants on notice of potential violations of the FCA relating to the misuse of federal funds.

83. On November 18, 2021, Plaintiff's employment with Defendants was illegally terminated in retaliation for her protected activity.

84. The termination of Plaintiff's employment violates the provisions of 31 U.S.C. §3730(h) prohibiting discrimination by employers against employees who investigate and/or report violations of the FCA.

85. As a direct and proximate result of Defendants' conduct and violation of FCA, Plaintiff has and continues to sustain economic damages in the form of lost wages and the value of lost benefits to the date of this Complaint and into the future.

86. As a direct and proximate result of Defendants' conduct and violation of the FCA, Plaintiff has sustained emotional distress, anxiety, embarrassment, humiliation, depression, denial of professional standing and reputation, and the ordinary pleasures of life.

87. Plaintiff is also due an award of liquidated damages as a result of Defendants' violation of the FCA.

88. As a direct and proximate result of Defendants' conduct, Plaintiff is entitled to recover her attorneys' fees and costs incurred herein.

# COUNT FIVE

# VIOLATION OF FAIR WAGES AND HEALTHY FAMILIES ACT

# (All Defendants)

89. By reference hereto, Plaintiff hereby incorporates all prior paragraphs as if fully alleged herein.

90. Arizona passed the Fair Wages and Healthy Families Act, A.R.S. §23-374 ("FWHFA") on November 8, 2016, in part to provide protections for employees who utilize protected sick leave.

91. Part of the action provides against retaliation of those employees who utilize protected sick leave and provides in A.R.S. §23-374 that "an employer shall not engage in retaliation or discriminate against any employee or former employee because the person has exercised rights protected under this article. Such rights include but are not limited to the right to request or use earned paid sick time…"

92. The statute further provides it is "unlawful for an employer's absence control policy to count earned paid sick time taken under this article as an absence that may lead to or result in discipline, discharge, demotion, suspension, or any other adverse action."

93. The Arizona Sick Leave Law gives employees essentially unfettered rights to take a day or two of sick time as needed without explanation.  See A.R.S. §23-374.

94. When an employer takes an adverse action against an employee within 90 days of the employee asserting a right under the Act, retaliation against the employee will be presumed.

95. Plaintiff utilized Arizona's Sick Leave Law from November 1 through 4, 2021 and was retaliated against when she was terminated just 14 days later.

96. Defendants' conduct violates A.R.S. §23-374.

97. Defendants' conduct constitutes a willful violation of A.R.S. §23-374.

98. As a direct result of Defendants' violation of A.R.S. §23-374, Plaintiff has suffered adverse action including termination and is entitled to an award of any and all remedies and penalties as set forth in A.R.S. §23-364 including but not limited to lost wages, statutory penalties, compensatory damages, and attorneys' fees.

99. In light of Defendants violation of A.R.S. §23-374, as a penalty and deterrent, Plaintiff is entitled to payment of no less than $150 day from the date of the violation of A.R.S. §23-374 until the date a final Judgment is entered.

## COUNT SIX

## VIOLATION OF THE AEPA

### (All Defendants)

100. By reference hereto, Plaintiff hereby incorporates all prior paragraphs as if fully alleged herein.

101. The AEPA provides, in part, that an employee has a claim for wrongful termination if the following occurs:

> The employer has terminated the employment relationship of an employee in retaliation for any of the following:
>
> (ii) The disclosure by the employee in a reasonable manner that the employee has information or a reasonable belief that the employer, or an employee of the employer, has violated, is violating or will violate the Constitution of Arizona or the statutes of this state to either the employer or a representative of the employer who the employee reasonably believes is in a managerial or supervisory position and has the authority to investigate the information provided by the employee and to take action to prevent further violations of the Constitution of Arizona or statutes of this state or an employee of a public body or political subdivision of this state or any agency of a public body or political subdivision

*See* A.R.S. §23-1501(c)(ii).

102. As noted above, Plaintiff informed Defendant Lewis, the City Attorney, the Mayor, and Human Resources of her reasonable belief that diverting funds from education into Housing was illegal and that Defendant Lewis had violated, was violating, or would continue to violate the statutes of Arizona including but not limited to A.R.S. §38-532 and A.R.S. §35-301.

103. In retaliation for said reports, Plaintiff was systematically removed from her position and terminated by Defendant City and Defendant Lewis**.**

104. Said termination by Defendants was a violation of the protections of the AEPA.

105. As a direct and proximate result of Defendants' violation of the AEPA, Plaintiff has and continues to sustain economic damages in the form of lost wages and the value of lost benefits to the date of this Complaint and into the future.

106. As a direct and proximate result of Defendants' conduct, Plaintiff has sustained emotional distress, anxiety, embarrassment, humiliation, depression, denial of professional standing and reputation, deprivation of the right to speak freely on matters of public concern, and the loss of ordinary pleasures of life.

### COUNT SEVEN
### VIOLATION OF PUBLIC POLICY
### (All Defendants)

107. By reference hereto, Plaintiff hereby incorporates all prior paragraphs as if fully alleged herein.

108. It is the public policy of the State of Arizona that public employees shall not misuse, and mismanage, and misappropriate public funds.

109. Plaintiff reported to Defendant Lewis, the City Attorney, the Mayor, and Human Resources of her reasonable belief that diverting funds from education into Housing was a misuse, mismanagement, and misappropriation of public funds.

110. In retaliation for said reports, Plaintiff was systematically removed from her position and terminated by Defendant City and Defendant Lewis.

111. Said termination of employment is a violation of the public policy of the State of Arizona.

112. As a direct and proximate result of Defendants' violation of public policy of the State of Arizona, Plaintiff has and continues to sustain economic damages in the form of lost wages and the value of lost benefits to the date of this Complaint and into the future.

113. As a direct and proximate result of Defendants' violation of the public policy of the State of Arizona, Plaintiff has sustained emotional distress, anxiety, embarrassment, humiliation, depression, denial of professional standing and reputation, deprivation of the right to speak freely on matters of public concern, and the loss of ordinary pleasures of life.

**WHEREFORE**, Plaintiff demands judgment against Defendants and each of them, jointly and severally, as follows:

1. For general and special damages to be proven at trial;
2. For compensatory damages to be proven at trial;
3. For punitive damages to be determined at trial (against Defendant Lewis only);
4. Liquidated damages;
5. For administrative penalties under A.R.S. §23-374 (of at least $150/day);
6. For compensatory damages to be proven at trial;

7. For reasonable attorneys' fees and costs; and

8. For such other relief, the Court deems appropriate.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial.

DATED this 25th day of October 2022.

                                **SCHLEIER LAW OFFICES, P.C.**

                                /s/ Bradley H. Schleier
                                Bradley H. Schleier
                                *Attorneys for Plaintiff Amy Trethaway*